No. 9362.

M. M. A. LANE vs. R. S. CAMERON,

AND

MORRIS KRAFT vs. M. F. MACHEN ET ALS.

(Consolidated.)

"Where the written titles to land have been destroyed by the burning of the public record" parol evidence of the contents of the burnt deeds is receivable.

Where a title-deed expresses a certain frontage as so many arpents, it cannot be stretched beyond it when such frontage by the depth expressed gives all the land claimed in the deed.

'The prescription of possession of ten or thirty years to be successful must be supported by a continuous and uninterrupted possession.

APPEAL from the Twelfth District Court, Parish of Grant. Overton, J.

*Jos. P. Hornor* and *F. W. Baker* for Mrs. Lane, Plaintiff and Appellant.

*R. J. Bowman, J. C. Wickliffe,* and *Robt. T. Hunter, contra.*

The opinion of the Court was delivered by

MANNING, J. These consolidated suits were here last year and were remanded because the lower court had refused a new trial, prayed on the ground of newly-discovered evidence to which we thought Cameron was entitled. The statement of the case and the issues between the parties may be found in the opinion read last year.

We then said the suit was petitory and its object the recovery of the Dubois tract of land of about two hundred acres. Much has been said of the extraordinary pretension that title to land may under any circumstances be proved by parol, and yet it is true that courts have so adjudged under the exceptional circumstances in which Rapides and Grant parishes were placed. Bynum v. Calhoun, Manning's Unrep. Cas. 236.

The public records of those parishes had been totally destroyed by fire. Under the fatuous system that prevails in our State whereby the original is deposited in the same office with the record of it and therefore both burn together, the burning of the court-house had swept out of existence every vestige of title to land. To say then that parol proof could not be received of title after proof that the written title had been destroyed by a public calamity would have been adding another folly to that which required all written evidence of title to be kept in one place. This court held otherwise.

But Mrs. Lane has her deed. Her maternal ancestor Wm. Smith bought two adjoining tracts of land together making thirty one arpents front, which she claims covers the land in dispute. Cameron alleges that this tract is wholly outside of that land—that it adjoins or abuts it on the upper line—and never formed part of the large plantation that now includes all these lands until it was bought by Meredith Calhoun of Eli Dubois. The lower judge's opinion may be here properly produced;—

"If the question to be decided here were whether the title of 1847 to Meredith Calhoun or the other written title of Mrs. Lane should prevail, I should have little trouble in deciding the question in favor of the elder title. But the controversy is not narrowed down to this issue. On the contrary it is claimed that there is no real conflict in the two titles, and while a great deal of testimony has been introduced to establish the burnt title, Mrs. Lane really stands before the court in the attitude of a party without an interest to protect, and cannot be listened to when she questions her opponent's title which her own does not authorize, and in this view of the merits of the case I concur.

To test the accuracy of this, reference must be had to actual surveys. The records furnish this evidence in a location of the titles of Mrs. Lane made in these cases under the order of court by George Johnston surveyor of Grant Parish. We have already seen that the claim of Mrs. Lane is made up of two tracts making a frontage of 31 arpents on Red River. In order therefore to establish whether there was really any conflict between the rival claimants, a starting point had to be

fixed. This was found at the line 2 T. N. O. being the upper line of the Monet tract as fixed by United States official survey, and about the correctness of which there can be and is in fact no contest. Adopting this line there is the initial or starting point, and tracing a line as near the river edge as shall be straight and the 31 arpents which constitute the river frontage of Mrs. Lane's land would be exhausted at the line C. E. S. of Johnston's map. It may not be out of place to say in this connection that I have taken occasion to verify the accuracy of Johnston's measurements with measurements of my own made and compared with other maps in the record, and find no reason to doubt its accuracy. If the line C. E. S. which seems to be the true line as indicated in 4 La. 520 (the judge means the case of Hickman vs. Hudson) is adopted as the upper line of Mrs. Lane's land, it will leave a strip between it and Rock island bayou, and this no doubt is the tract which Mrs. Dubois says commenced at Rock island bayou and went down the river which her husband sold to Meredith Calhoun in 1847, and the same tract which was specially excepted and reserved though by indefinite limits as belonging to Hilaire Dubois in the succession sale of Graham to Young under which Mrs. Lane claims to hold this property. Between the claim set up by Mrs. Lane and the one urged by Cameron there is then clearly no conflict and Mrs. Lane is without colorable excuse to question Cameron's title unless she does it by interposing some other title. She claims she has acquired this right by the possession of ten and thirty years.

To understand the force of this plea it becomes necessary to observe that there is a field two miles to the rear of this tract known as Robertson's corner which seems to have been in the possession and was worked by Wm. Smith the ancestor of Mrs. Lane as far back as 1838 or 1839. Smith died about 1840 and Mary S. Calhoun the mother of Mrs. Lane succeeded by inheritance to the possession commenced. It is a textual provision of our Code that no prescription runs between husband and wife during the coverture· * * * If prescription does run it is clear that it has been interrupted in the present case by the acquisition of an adverse title by the husband from Dubois in 1847 only seven or eight years after the death of Smith. The prescription of thirty years cannot therefore avail Mrs. Lane.

Neither will the prescription of ten years avail her. Calhoun died about 1869. His son and administrator evidently treated this property as belonging to the succession of Meredith Calhoun his father. In no other way can his acts of administration be explained. We find the

property was sold for taxes in 1877 or '78 as the property of that suc-
cession, and at a still later date exposed at a succession sale of Mere-
dith Calhoun provoked by the creditors of his succession to pay its
debts. These are facts that do not show in Mrs. Lane the character of
possession necessary to support the prescription of ten years. The
plea of prescription must be overruled. The view already taken of
the case obviates the necessity of looking into the alleged informalities
of the tax-sale."

We have nothing to add to this opinion of the district judge.

Judgment affirmed.

Rehearing refused.